JARECKI MANUF'G CO., Limited, v. CITY OF TOLEDO, (three cases.)

(Circuit Court. N. D. Ohio, W. D. January 3, 1893.)

No. 1,076.

MUNICIPAL CORPORATIONS—CONSTITUTIONAL LAW—RETROSPECTIVE LAWS.

Where a city incurs liabilities for materials furnished for the completion of a natural gas plant, after exhausting the proceeds of bonds issued under an enabling act, a supplementary statute (Act Ohio, April 7, 1892) validating and providing for the enforcement of such obligations is not unconstitutional, as imposing upon the city burdens without consent or consideration, or as conferring new corporate powers upon the city. Read v. City of Plattsmouth, 2 Sup. Ct. Rep. 208, 107 U. S. 568, and New Orleans v. Clark, 95 U. S. 644, applied.

At Law. Actions by the Jarecki Manufacturing Company, Limited, against the city of Toledo, Ohio, to recover for materials furnished and used in the completion of a natural gas plant. Heard on demurrer to the amended reply. Overruled.

King & Tracey and E. W. Tollerton, for plaintiffs.
W. H. A. Read, for defendant.

RICKS, District Judge. This suit, and two others of similar character, were instituted against the city of Toledo to recover for the value of certain material furnished the trustees of the natural gas works of the city, and used in completing their lines, in order to furnish natural gas to the citizens of that city.

The plaintiffs, in their petitions, aver that the materials and supplies were furnished at prices agreed upon, and were used for the purposes stated; that the city received said materials and supplies; has used the same in the construction of said natural gas plant; is still using the same; has not paid the plaintiffs any part of the sums due, but that the same are just liabilities against said city. The answer sets forth, substantially, the defense that under the original enabling act the city of Toledo was authorized to issue not to exceed

$750,000 of bonds, and from the proceeds thereof to construct a natural gas plant for the use of the inhabitants of said city; that all of said funds have been exhausted; and that the indebtedness set forth in the petitions of the several plaintiffs was created without complying with the ordinances of the city and the laws of the state of Ohio in the several respects named in the answer, and was therefore not binding on the city. To this answer the plaintiffs reply, admitting that the legislature passed the original enabling act January 22, 1889, and denying each and every other allegation in the amended answer contained, except those herein specifically admitted.

The second paragraph of the reply sets forth the fact that on the 7th of April, 1892, the legislature of the state of Ohio duly passed an act entitled "An act to supplement section 2491 of the Revised Statutes of Ohio, as heretofore supplemented, by adding section 2491c and section 2491d," and then sets out section 2491d in full, which authorizes—

"Any city of the third grade, of the first class, which, by its board of natural gas trustees, has constructed or caused to be constructed a natural gas plant, or any portion thereof, and has accepted and approved the labor performed and the material furnished in such construction at a price or prices agreed upon between such board and the person or persons furnishing such labor and materials, and the claim or claims therefor have never been paid, nor any funds provided for the payment thereof, and such city still remains in the use and enjoyment of the material and labor so furnished, the prices so agreed to be paid shall be deemed and held to be binding and conclusive as to all of said contracting parties, although such city, or board contracting in behalf thereof, exceeded the power and authority heretofore granted to such city or board, and may not have complied with the laws then in force."

The plaintiffs further allege that all materials mentioned in their several petitions were so furnished by them to the defendant long prior to the passage of the act aforesaid, and said defendant, ever since the same was furnished, has been and still remains in the use and enjoyment of the materials so furnished; that said claims have never been paid, nor any funds provided for the payment thereof.

The principal contention now to be considered is the claim of the defendant that this enabling act of the 7th of April, 1892, is unconstitutional, because it is a special act of the legislature, attempting to confer upon the city of Toledo corporate power contrary to the constitution of the state. There is no dispute but that the original enabling act, authorizing the city to construct and operate a natural gas plant, was valid and constitutional. There is no dispute but that the city, through its gas trustees, in pursuance of the powers conferred by said act, proceeded to buy territory, sink gas wells, construct high and low pressure pipe lines, for the purpose of furnishing natural gas to the citizens of Toledo, and that they executed their trust, so far as the funds available under the original act permitted them to do. There is no dispute but that, acting under this power, they created additional liabilities, which were deemed by them necessary for the completion of their work, and in order to furnish the city the benefits of the natural gas contemplated by the original act. There is no dispute but that the city has received and used the supplies sued for in these three different suits, and no dispute but that

the city is justly indebted to the plaintiffs in some amount,—whether to the full sum claimed or not it is not necessary to consider, for the purpose of disposing of this demurrer.

The question now presented is, broadly stated, whether the city can be permitted to avoid the payment of these just debts because the legislature had no constitutional power to validate them, as it attempted to do by the act referred to. It is contended on behalf of the city that the legislature has no power to make legal and valid debts which were incurred when the city had no constitutional power to create such indebtedness. The proposition, as stated, is not the real one under consideration. It is better expressed by Mr. Justice Matthews, in his usual lucid and forcible style, in his opinion in the case of Read v. City of Plattsmouth, 107 U. S. 568, 2 Sup. Ct. Rep. 208, where he says:

"The act in question, so far as it relates to the bonds in suit, does not confer any corporate power upon the city, in the sense of the constitution of the state. The statute operates upon the transaction itself, which had already previously been consummated, and seeks to give it a character and effect different in its legal aspect from that which it had when it was in fieri. Whether such an effect may be given by the legitimate exercise of legislative power, depends upon those considerations which draw the line beyond which retroactive laws cannot pass, and is not affected by the supposed form of the enactment as a special or general act conferring corporate power; for it operates upon the rights of the parties, as determined by the equity on their circumstances and relations, and gives to them the sanction derived from subsequent confirmation by clothing them with forms which are essential to their enforcement, but not to their existence."

Apply the principle here announced to the cases under consideration. The act in question, so far as the accounts sued upon are concerned, does not confer upon the city of Toledo any corporate power, in the sense of the constitution. These transactions had already been consummated. The relations of the parties had been determined by their voluntary acts. The equities of these relations and surroundings were of the highest rank. The defendant had received and used the material and supplies furnished by the plaintiffs, and agreed to pay therefor. The legislature, finding such strong equities to exist, and the defendant willing to be clothed with power to confirm the contracts, enacted this general statute, which operates upon the transactions themselves, and upon the rights of the parties, by clothing them with forms essential to their enforcement.

In the same opinion, the learned justice further states:

"In the present case, the statute in question does not impose upon the city of Plattsmouth, by an arbitrary act, a burden, without consent and consideration. On the contrary, upon the supposition that the bonds issued as to the excess over $15,000.00 were void, because unauthorized, the city of Plattsmouth received the money of the plaintiff in error, and applied it to the purpose intended.—of building a schoolhouse on property,—the title to which is confirmed to it by the very statute now claimed to be unconstitutional; and an obligation to restore the value thus received, kept, and used immediately arose."

These words in their spirit, and almost literally, apply to the present cases. The statute which validated these claims does not impose upon the city of Toledo, by an arbitrary act, burdens without consent and consideration. It is a matter of local history that the people of

Toledo voted to issue these bonds and incur this vast indebtedness after the matter was fully canvassed, and all the objections fully considered. So that it may be fairly said that the people took upon themselves this immense burden, of over $1,000,000, with full knowledge of all the responsibility to follow. This court is certainly not disposed to help them avoid paying full value for all material furnished, no matter how unfortunate that investment has proved to be. The consequences must rest upon those responsible for the undertaking.

I think the case above referred to, in 107 U. S. and 2 Sup. Ct. Rep., and the case of New Orleans v. Clark, in 95 U. S., are both applicable to and conclusive of the questions in these cases. I do not think this act confers any new corporate power upon the city of Toledo. The city was bound by the force of the transactions, as stated, to return to the vendors a fair and legal equivalent for the materials received and used; and the statute now in question only recognized the existence of that obligation, and, by confirming it, provided a medium for enforcing it according to the original intention and purpose. This is not conferring any new corporate power upon the city. It is merely a special act taking away from the corporation the power to interpose an unconscionable defense against a just claim, and to avoid an obligation to pay an equivalent for public benefits which it has continued to enjoy. It cannot restore to the plaintiffs the material received from them and used, and does not now offer to do so. It certainly ought to be able to do one or the other,—to return the material, or to be bound to pay a reasonable price for the same.

It is further contended that this act seeks to take away from the city all right and authority to defend as to the value of the materials furnished. The act, upon its face, referring to the amount of such obligations, says:

"The prices so agreed to be paid shall be deemed and held to be binding and conclusive as to all of said contracting parties, although such city, or board contracting in behalf thereof, exceeded the power and authority heretofore granted to such city or board, and although such city or board may not have complied with the laws then in force."

It is not necessary to pass upon this particular question at this time. If there was any averment that there was any fraudulent combination between the parties as to the prices agreed upon, by which the people of the city were to be defrauded, I think it perhaps doubtful whether the act could be held to make such prices conclusive; but, as I say, that question is not now presented. Even if this part of the act should be unconstitutional, it would not invalidate the entire act, if other parts of it were valid and constitutional.

On the whole, I am clearly of the opinion that the demurrer to the second paragraph of the reply should be overruled.

The three cases subsequently tried to court, and judgment in each case for plaintiff.